1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY ALEXANDER TEMPLE,<br><br>             Plaintiff,<br><br>   v.<br><br>CARL V. ADAMS, et al.,<br><br>       Defendants. | CV-F-04-6716 OWW DLB (NEW DJ)<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT (DOCS. 39 & 42) AND PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (DOC. 68)** |

## I.  INTRODUCTION

Plaintiff, a state prisoner proceeding in propria persona and in forma pauperis, brings claims under 42 U.S.C. § 1983 for various alleged constitutional violations stemming from his participation as a suspect in a murder case.[1]  (*See* Doc. 19, First Amended Complaint ("FAC").)  Defendants Sutter County, Yuba City, Carl V. Adams, Frederick Schroeder, and Jeffrey W. Webster have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment under Rule 56.  (Doc. 39, filed Dec. 22, 2005.)  Defendants Michael Alvarez, Michael Carlsen, John Case, John L. Montgomery,

---

[1]      Though it appears that Plaintiff's first amended complaint alleges claims under California law, Plaintiff asserts in his opposition brief that "there are NO STATE CLAIMS presented by Plaintiff."  (Doc. 90, filed April 28, 2006, 2:17-18.)

1   Genevieve Rangel, Terry Rosario, J. L. Suter, and James P. Walker
2   have filed a separate motion to dismiss under Rule 12(b)(6).
3   (Doc. 42, filed Dec. 27, 2005.)  Plaintiff has filed a motion for
4   a preliminary injunction seeking designation as a protected
5   witness under California law, placement in another prison,
6   housing in a single cell pending transfer, and a name change.
7   (Doc. 68, filed January 6, 2006.)

8

9               **II.  FACTUAL AND PROCEDURAL HISTORY**

10       The facts as alleged in Plaintiff's FAC are as follows.
11  Plaintiff is a state prisoner currently confined in California
12  State Prison in Corcoran, California.  FAC 3:25-26.  On October
13  6, 1991, Magdalina Helen Roberts was shot and killed at a
14  convenience store in Yuba City, California.  FAC ¶ 1.  In
15  February of 1991, Plaintiff, then an inmate of Yuba County Jail,
16  sent a letter to Yuba City Police Chief Roy Harmon indicating
17  that he knew the name of Roberts' killer.  FAC ¶ 7.  Plaintiff
18  later indicated to Yuba County Sheriff Gary Tindle that John
19  Wayne Barton was the perpetrator.  FAC ¶ 8. Plaintiff did not
20  request any special treatment in exchange for the information.
21  FAC ¶ 9.  Law enforcement officials were able to use forensic and
22  video evidence to confirm that Barton had killed Roberts.  FAC
23  ¶ 12.

24       On August 5, 1991, Barton was arraigned on charges stemming
25  from Roberts' death.  FAC ¶ 17.  On January 28, 1992, Defendant
26  Webster, then a Corporal with the Yuba City Police Department,
27  interviewed Larry Ferguson, a Sutter County Sheriff transport
28  officer, and composed a police report.  FAC ¶ 20.  The report

**2**

contained statements Barton had made to Ferguson that he knew
Plaintiff was the confidential informant and that "[i]f they want
me to plead, they're gonna have to put it on paper." *Id.*
Defendant Webster forwarded the police report to Defendant Adams.
*Id.*

Barton's attorney, Sutter County Public Defender Roy Van Den
Heuval negotiated a plea agreement with Defendant Schroeder,
Sutter County Assistant District Attorney, that was approved by
Defendant Adams, the Sutter County District Attorney.  FAC ¶ 23.
A "special condition" of the plea agreement required the
prosecution to disclose to Barton in writing the name of the
informant whose testimony led to his arrest.  FAC ¶ 24.  On
February 21, 1992, Barton pled guilty to Robert's murder.  FAC
¶ 25.  At that time, Defendant Schroeder presented the court with
a sealed document indicating that Plaintiff was the informant in
the case.  *Id.*  On March 23, 1992, Barton was sentenced to a
prison term of 30 years to life.  FAC ¶ 29.  After the
sentencing, the court gave Barton the document disclosing
Plaintiff as the informant.  *Id.*

On the day of the sentencing, Defendant Adams appeared on
several televison and print media making public comments
indicating that the informant in the case had agreed to have his
identity disclosed to Barton.  FAC ¶ 30.  Plaintiff alleges that
he had, in fact, not been told of the condition that his name be
disclosed as part of the plea agreement and did not agree to
disclosure.  FAC ¶ 31.

During May and June of 1992, while housed ant the CSP-New
Folsom Prison, Plaintiff learned that Barton was calling

**3**

Plaintiff an informer in his murder case.  FAC ¶ 32.  Other
inmates in the prison heard about the "informant issue" on
"Current Affair."  *Id.*

Around June 2, 1992, Plaintiff wrote letters to Judge
Timothy Evans, the judge who presided over the Barton murder
case; to Defendant Adams; and to Marilyn J. Alverson, a police
officer with the Yuba City police.  FAC ¶ 34.  The letters
expressed "deep anger and frustration and concern about his
safety."  FAC ¶ 34.

On December 17, 1992, Barton showed documents to his
cellmate David Lynn Scoggins indicating that Plaintiff was the
informant in the Roberts case.  FAC ¶ 35.  Scoggins spread this
information to other inmates in the California state prison
system, including inmates imprisoned at Pelican Bay, New Folsom,
Tehachapi, and Corcoran.  *Id.*  As a result of these rumors,
Plaintiff had a fist fight with another prisoner.  FAC ¶ 36.

In January 1996, Scoggins and Plaintiff were housed in the
same facility at New Folsom.  *Id.*  Plaintiff started a fist fight
with Scoggins as a means of "refuting the informant allegations."
*Id.*  In August of 1997, Plaintiff was placed in administrative
segregation.  FAC ¶ 37.  He learned at this time that it was
"common knowledge" that he was an informant in the Roberts case
and that "he was to be killed as a result."  *Id.*

Plaintiff contacted Defendant John Case, his "Correctional
Counselor I," to request protective custody as an exposed
informant.  FAC ¶ 38.  He provided Defendant Case with Evans',
Defendant Adams', and Alverson's names "for verification
purposes."  *Id.*  Defendant Case denied the request for lack of

**4**

1  proof of Plaintiff's informant status. *Id.* Defendant Case

2  brought the matter up in an Institutional Classification Hearing

3  on November 21, 1997. *Id.* Defendant Chief Deputy Warden Terry

4  Rosario and Defendant James P. Walker, Facility Captain, were

5  also present at the meeting. *Id.* Collectively, Case, Rosario,

6  and Walker denied Plaintiff protective custody status. *Id.*

7  Plaintiff was instead transferred to Corcoran State Prison. *Id.*

8      On September 19, 1997, and on other occasions thereafter,

9  Plaintiff brought up the informant issue to several committee

10  members and counselors in several classification committee

11  actions. FAC ¶ 39. When Plaintiff did so, he was asked for

12  proof he could not provide. *Id.*

13     On November 28, 1997, Plaintiff told Richard Dangler and

14  Charles Stevens, attorneys he had retained, about the exposed

15  informant issue and provided them with the names, addresses, and

16  telephone numbers of Evans, Defendant Adams, and Alverson to

17  verify his claims. FAC ¶ 40. In March 1998, Plaintiff contacted

18  Defendant J. Suter, his assigned Correctional Counselor I, to

19  request protective custody based on his exposed informant status.

20  FAC ¶ 41. His request was denied for lack of proof. *Id.* After

21  this denial, Plaintiff asked Dangler to investigate the informant

22  issue and to intercede with prison officials on his behalf.

23  FAC ¶ 42. Dangler did not make any further inquiry into the

24  prison officials' conduct. *Id.*

25     During July or August 1998, Plaintiff again asked his

26  assigned Correctional Counselor I for protective custody, which

27  was denied for lack of proof. FAC ¶ 43. In 2001, Plaintiff

28  began hearing rumors that Scoggins, who was confined in a

**5**

neighboring area of the Corcoran Prison, the Facility 3B Yard, was again telling inmates that Plaintiff was a "rat" in a murder case against Barton. FAC ¶ 44. This information was disseminated in the Facility 3A Yard, where Plaintiff was confined, though it was not supported with paperwork. *Id.* An inmate who had transferred from Facility 3A to 3B told Plaintiff "to watch himself" because other inmates in Facility 3A were aware of his informant status. FAC ¶ 46.

On February 12, 2002, fearing that he would be killed as an informant, Plaintiff cut through his cell window and attempted to escape from Corcoran Prison. FAC ¶ 47. In the unsuccessful attempt, Plaintiff broke multiple bones in each foot. *Id.*

On February 19, 2002, Defendants Investigative Services Unit ("ISU") Sergeant John L. Montgomery, ISU Officer Michael Carlsen, and ISU Officer Michael Alvarez interviewed Plaintiff's cellmate, John Kocak. FAC ¶ 48. Kocak told the ISU that Plaintiff was in danger as an exposed informant. *Id.* Kocak also told them that he was solicited by inmates David Maples and Michael Handline to kill Plaintiff after the escape. *Id.* Plaintiff told Defendants Montgomery and Alvarez of his concerns about being an exposed informant. FAC ¶ 49. Defendants Montgomery and Alvarez did not tell Plaintiff that Maples and Handline had solicited Kocak to kill him. *Id.*

On September 12, 2002, the Kings County District Attorney's Office charged Plaintiff with attempted escape and destruction of prison property. FAC ¶ 50. In August 2002, while awaiting trial, Plaintiff was "placed up for transfer" to Salinas Valley State Prison ("SVSP"). FAC ¶ 52. Plaintiff asked Defendant

**6**

1   Genevieve Rangel to take him off the transfer list because such a
2   transfer would endanger his life.  *Id.*  On November 30, 2002,
3   Plaintiff learned through discovery in his criminal case that he
4   was up for transfer to SVSP, where  Handline, who had solicited
5   Kocak to kill him, was housed.  FAC ¶ 53.

6       In March 2003, Plaintiff obtained, pursuant to subpoena
7   duces tecum, a copy of the document that had notified Barton that
8   Plaintiff was the informant.  FAC ¶ 54.  Before receiving the
9   document, Plaintiff had believed that Barton had only been
10  "verbally informed" of his name.  FAC ¶ 56.  On June 6, 2003, a
11  search of Barton's cell at Tehachapi State Prison revealed six
12  copies of the document identifying Plaintiff, along with copies
13  of articles and police reports indicating that Plaintiff was the
14  informant.  FAC ¶ 59.

15      On July 14, 2003, Plaintiff represented himself in the
16  criminal trial on the charges of escape and destruction of prison
17  property.  FAC ¶ 60.  After an eight day trial, the jury found
18  Plaintiff not guilty based on the necessity defense.  FAC ¶ 61.

19      On December 16, 2004, Plaintiff filed this lawsuit.  (Doc.
20  1, Compl.)  On February 4, 2005, the Magistrate Judge, conducting
21  an initial review pursuant to 28 U.S.C. § 1915(e)(2), dismissed
22  the complaint with leave to amend.  (Doc. 14.)  On February 9,
23  2005, the Magistrate Judge issued findings and recommendations
24  denying Plaintiff's motion for a preliminary injunction on the
25  basis that Defendants had not yet been served.  (Doc. 15.)  On
26  April 12, 2005, Plaintiff filed an amended complaint.  (Doc. 19.)
27  On April 13, 2005, the Magistrate Judge issued findings and
28  recommendations dismissing Plaintiff's claims against Defendants

**7**

1   Roy Van Den Heuval, Dr. John Dang, Barton, and the California

2   Department of Corrections for failure to state a claim.  (Doc.

3   23.)   District Judge Robert E. Coyle ordered the Magistrate

4   Judge's findings adopted in full.  (Doc. 25, filed June 15,

5   2005.)

6        On December 22, 2005, Defendants Adams, Schroeder, Webster,

7   Yuba City, and Sutter County filed a motion to dismiss the FAC

8   for failure to state a claim or, in the alternative, for summary

9   judgment.  (Doc. 39.)   They contend (1) that all claims are

10  barred by the statute of limitations, (2) that Defendants Adams

11  and Schroeder enjoy prosecutorial and Eleventh Amendment

12  immunity, (3) that Defendants Adams, Schroeder, and Webster enjoy

13  qualified immunity, and (4) that Plaintiff cannot state a Section

14  1983 claim under the Eighth or Fourteenth Amendment, (5) a 42

15  U.S.C. § 1985(3) claim, (6) a claim for municipal liability

16  against Yuba City or Sutter County, or (7) a claim pursuant to

17  state law.  *Id.*  On December 27, 2005, Defendants Alvarez,

18  Carlsen, Case, Montgomery, Rangel, Rosario, Suter, and Walker

19  filed a separate motion to dismiss.  (Doc. 42.)   They contend (1)

20  that the statute of limitations bars all claims against

21  Defendants Case, Rosario, Walker, and Suter and (2) that

22  Plaintiff has failed to state a claim for a cognizable

23  constitutional injury against Defendant Rangel.  *Id.*  Defendants

24  do not move to dismiss the claims against Defendants Alvarez,

25  Carlsen, or Montgomery.  *Id.*  Plaintiff opposes both motions to

26  dismiss.  (Doc. 89, filed April 28, 2006; Doc. 90, filed April

27  28, 2006.)   Plaintiff has also filed a motion for discovery under

28  Rule 56(f) of the Federal Rules of Civil Procedure (Doc. 88,

**8**

filed April 28, 2006), which Defendants oppose (Doc. 94, filed May 19, 2006).

On January 6, 2006, Plaintiff filed an "Amended Motion" for a preliminary injunction, along with supporting exhibits.  (Doc. 69.)  Defendant Adams filed an opposition to the motion.  (Doc. 75, filed January 20, 2006.)

On June 7, 2007, this case was reassigned to the undersigned due to the senior status of Judge Coyle.  (Doc. 96.)

### III.   **STANDARD OF REVIEW**

**A.   Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In testing the sufficiency of a complaint against a Rule 12(b)(6) challenge, a court must "accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).  The court need not, however, "accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

A complaint may be dismissed as a matter of law if there is a lack of a cognizable legal theory or if there are insufficient facts alleged under a cognizable legal theory. *Balistreri v.*

**9**

1 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The
2 court must determine whether or not it appears to a certainty
3 under existing law that no relief can be granted under any set of
4 facts that might be proved in support of a plaintiff's claims.
5 *De La Crux v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), *cert.*
6 *denied*, 441 U.S. 965 (1979).  The Ninth Circuit construes pro se
7 pleadings liberally on a defendant's motion to dismiss for
8 failure to state a claim.  Thompson v. Davis, 295 F.3d 890, 895
9 (9th Cir. 2002).  The court may consider the complaint itself
10 along with any material properly considered as part of the
11 complaint.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896
12 F.2d 1542, 1555 n.19 (9th Cir. 1989).  Where the complaint fails
13 to state a claim on which relief can be granted, leave to amend
14 "shall be freely given when justice so requires."  Fed. R. Civ.
15 P. 15(a); *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir.
16 1990).  A court may, however, dismiss a complaint without leave
17 to amend where "the allegation of other facts consistent with the
18 challenged pleading could not possibly cure the deficiency."
19 *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,
20 1401 (9th Cir. 1986).

21

22        **B.**   **Preliminary Injunction**

23        The standard for granting a preliminary injunction balances
24 the plaintiff's likelihood of success against the hardships to
25 the parties.  *Clear Channel Outdoor, Inc. v. City of L.A.*, 340
26 F.3d 810, 813 (9th Cir. 2003).  Under the traditional test, a
27 plaintiff must show:

28               1)   a strong likelihood of success on the merits,

**10**

1                2)      the possibility of irreparable harm to the

2                        plaintiff if injunctive relief is not granted,

3                3)      a balance of hardships favoring the plaintiff, and

4                4)      advancement of the public interest (in certain

5                        cases).

6   *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir.

7   2005).  Alternatively, a court may grant an injunction if a

8   plaintiff "demonstrates *either* a combination of probable success

9   on the merits and the possibility of irreparable injury *or* that

10  serious questions are raised and the balance of hardships tips

11  sharply in his favor."  *Id.* (citation omitted, emphasis in

12  original).  These two formulations of the injunctive relief test

13  are not separate tests but rather two points on a sliding scale,

14  in which the required degree of irreparable harm increases as the

15  probability of success decreases.  *Id.*

16

17                      **IV.   LEGAL ANALYSIS**

18       **A.   Defendants' Motions to Dismiss**

19            **1.   Prosecutorial Defendants**

20       In Section 1983 actions, federal courts apply the forum

21  state's statute of limitations for personal injury actions.

22  *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Jones v. Blanas*, 393

23  F.3d 918, 927 (9th Cir. 2004).  Prior to January 1, 2003,

24  California's one-year statute of limitations for personal injury

25  actions applied to Section 1983 suits in federal court.

26  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004), *cert.*

27  *denied*, 544 U.S. 968 (2005).  Effective January 1, 2003, the new

28  California statute of limitations for assault, battery, and other

**11**

1  personal injury actions is two years.  Cal. Civ. Proc. Code
2  § 335.1.  Because the extension is not retroactive, it does not
3  resuscitate claims that would have already been barred by the
4  prior statute of limitations.  *Maldonado*, 370 F.3d at 954-55.

5       Federal courts also apply the forum state's law regarding
6  tolling except to the extent that any of these laws is
7  inconsistent with federal law.  *Jones*, 393 F.3d at 927.
8  California Code of Civil Procedure § 352.1[2] tolls the statute of
9  limitations for up to two years while the plaintiff is
10 incarcerated.  It is undisputed that Plaintiff has been
11 continuously incarcerated during the entire period relevant to
12 this lawsuit.  (Doc. 93, filed May 19, 2006, at 8:6-9.)  Applying
13 the one-year statute of limitations period and two years of
14 tolling under Section 352.1, any Section 1983 claims that accrued
15 after December 16, 2001, are not barred by the statute of
16 limitations.  *See Maldonado*, 370 F.3d at 954-55.

17      Federal law determines when a Section 1983 claim accrues.
18 *Id.* at 955.  "Under federal law, a claim accrues when the
19 plaintiff knows or has reason to know of the injury which is the
20 basis of the action."  *Id.*  For accrual of a claim to be found,

21

22       [2]   California Code of Civil Procedure § 352.1 provides, in
   relevant part, as follows:
23

24            (a) If a person entitled to bring an action,
              mentioned in Chapter 3 (commencing with
25            Section 335), is, at the time the cause of
              action accrued, imprisoned on a criminal
26            charge, or in execution under the sentence of
              a criminal court for a term less than for
27            life, the time of that disability is not a
              part of the time limited for the commencement
28            of the action, not to exceed two years.

**12**

"it is critical that the plaintiff know that he has been hurt and who inflicted the injury." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)).  Once he has this knowledge, the plaintiff is on inquiry notice to determine the details of his claims that are readily discoverable.  *Id.* (citing *Kubrick*, 444 U.S. at 123).  In determining when a claim accrues the focus is on the time of the illegal act, "not the point at which the consequences of the act becomes painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (wrongful termination claim accrued when defendants notified plaintiff that she would be terminated, not when her position actually terminated); *see also Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (holding that a cause of action accrued upon the freezing of appellants' ERISA reimbursement amounts and that there was not a continuing violation each and every time the appellants were entitled to a reimbursement payment).

Plaintiff alleges that he can state a cause of action against Defendant Adams, Defendant Schroeder, and Defendant Webster, captain of the Yuba City Police Department, based on their conduct in connection with disclosing his identity to Barton and for failing to protect him following the disclosure. Plaintiff contends that his claims against Defendants Adams, Schroeder, and Webster (collectively "Prosecutorial Defendants") accrued in March 2003 when he alleges he first became aware that his name had been given to Barton in writing.  FAC 15 n.4. Plaintiff alleges he was previously unaware Barton had been given written documentation indicating that he was the informant.  *Id.*

**13**

Before this time, Plaintiff had speculated that Barton had been
"verbally informed" of Plaintiff's identity off the record.  FAC
¶ 56.  Plaintiff argues that the written document amounts to a
"death warrant inside of prison" that "can get a prisoner
anywhere in America killed."  FAC ¶ 30.

Defendants argue that Plaintiff's claim accrued much earlier
when Plaintiff first learned that his role as an informant was
disclosed to Barton.  The FAC indicates that Plaintiff was aware
that Barton had been told that Plaintiff informed on him as early
as 1992:

> During May and June of 1992, while housed at
> CSP-New [F]olsom Prison (C-Facility)
> plaintiff began hearing that John Wayne
> Barton was housed at New Folsom (B-Facility)
> and was calling plaintiff an informant in his
> murder case.  Inmates coming from B-Facility
> to C-Facility on institution transfers stated
> that the case had just aired on "Current
> Affair" referencing the informant issue
> . . . .

FAC ¶ 32.  Further, Plaintiff alleges that around June 2, 1992,
"plaintiff wrote letters to Judge Timothy Evans, Carl Adams, the
court clerk and a [Y]uba [C]ity police officer by the name of
Marilyn J. Alverson expressing deep anger and frustration and
concern about his safety as well as that of other correctional
officers . . . ."  FAC ¶ 34.  The FAC also alleges that "[i]n the
month of August 1997, plaintiff was placed in Administrative
Segregation and subsequently learned through several inmates that
it was 'Common Knowledge' on C-Facility that he was an informant
in the Helen Roberts case and that he was to be killed as a
result."  FAC ¶ 37.

Before November 1997, Plaintiff had complained to prison

**14**

officials that he was an "Exposed Informant."  FAC ¶ 38.  On November 28, 1997, Plaintiff retained an attorney regarding the "exposed informant issue."  FAC ¶ 40. Plaintiff indicated that Defendant Adams and Yuba City police officer Alverson "could verify the exposed informant issue."  *Id.*  In March of 1998, Plaintiff requested protective custody based on his status as an exposed informant.  Facts pled in the FAC and undisputed by Plaintiff in his opposition establish that, by 1997, he was aware that Barton had been told that he was an informant, that Barton's prosecutors and Yuba City police officers were responsible, that disclosure threatened his safety, and that his life was in danger as a result.

That Plaintiff later became aware Defendant's actions had put him in more danger than he had previously realized and that he eventually suffered greater injuries does not alter the accrual of his claims. *Nasim*, 64 F.3d at 955.  In *Nasim*, the plaintiff brought a claim under Section 1983 claiming that he had suffered physical and psychological injuries as a result of asbestos removal at the prison where he was confined.  64 F.3d at 956.  The plaintiff's complaint revealed that, before the crucial statute of limitations date, he knew that asbestos was dumped into his cell and that asbestos was a health hazard, he complained to medical staff and prison officials about his exposure, he witnessed others who had been injured by asbestos, and he suffered physical and psychological injuries himself.  Id. Plaintiff contended that he was not aware of the nature of his injuries until after the crucial limitations date.  Id.  Nor did he become aware, before that time, that asbestos was linked to

**15**

1   some of the ailments that he suffered, including strokes, eye

2   disease, or skin disease.  Id.  The court dismissed plaintiff's

3   complaint based on a statute of limitations defense.  *Id.*  It

4   held that Plaintiff's claim accrued once he knew that he had been

5   exposed to asbestos, that it was dangerous, and that he had been

6   injured, even though he was unaware of the extent of his injuries

7   until later, after the crucial limitations date.  *Id.*

8       Here, before the crucial date, Plaintiff knew that

9   Prosecutorial Defendants had disclosed his identity to Barton and

10  that, as a result, his life was in danger.  The danger Plaintiff

11  faced was already manifest prior to 1996 in his fights with two

12  different inmates over the informant allegations.  FAC ¶ 36.

13  Long before December 16, 2001, Plaintiff was aware that

14  Prosecutorial Defendants' disclosure of his identity put him in

15  mortal danger, which had led him to complain to the authorities.

16  The danger he faced had also been realized in the form of

17  physical altercations.  As early as November 28, 1997, Plaintiff

18  had undertaken to retain lawyers to take action on his behalf

19  because of the danger he faced as an exposed informant.  FAC

20  ¶ 39, 40.  He had directed his lawyer to contact members of the

21  Sutter County District Attorney's office and the Yuba City Police

22  Department to investigate on his behalf.  FAC ¶ 40.  A reasonable

23  investigation would have revealed that Prosecutorial Defendants

24  were responsible for negotiating and implementing the plea

25  agreement.[3]

26

27       [3]   Plaintiff's attorney's failure to pursue his claims
    does not mitigate his failure to file timely his claim.  *See Link*
28  *v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner

**16**

1    The court accepts as true Plaintiff's allegations that the
2    existence of written documentation of his informer status placed
3    him in even greater danger and that he suffered the most serious
4    injury when he attempted to escape from prison on February 12,
5    2002.  His failure, however, to understand the full extent of the
6    danger he faced or the extent of the injuries he would later
7    suffer did not prevent his claim from accruing at the moment he
8    knew that Prosecutorial Defendants' conduct had injured him.  The
9    court finds that Plaintiff's claims against Prosecutorial
10   Defendants for their disclosure of his identity accrued prior to
11   December 16, 2001.

12   Plaintiff argues that the statute of limitations should have
13   been tolled based on fraudulent concealment by Prosecutorial
14   Defendants, citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397
15   (1946).  The equitable doctrine of fraudulent concealment "is
16   read into every federal statute of limitation."  *Thorman v. Am.*
17   *Seafoods Co.*, 421 F.3d 1090, 1095 n.4 (9th Cir. 2005) (quoting
18   *Holmberg*, 327 U.S. at 397).  A plaintiff seeking to establish
19   fraudulent concealment carries the burden of showing that the
20   defendant "affirmatively misled" him as to the "operative facts
21   that give rise to the claim" and that plaintiff had neither
22   "actual nor constructive knowledge" of the operative facts
23   despite his diligence in trying to uncover them.  *Id.* at 1094.
24   "Equitable estoppel focuses on the defendant's wrongful actions
25   preventing the plaintiff from asserting his claim."  *Leong v.*

26   _____

27   voluntarily chose this attorney as his representative in the
     action, and he cannot now avoid the consequences of the acts or
28   omissions of this freely selected agent.").

**17**

1 | *Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003).

2 |       Plaintiff contends that Prosecutorial Defendants
3 | "consciously and deliberately concealed evidence" that it had
4 | informed Barton of Plaintiff's identity in written form.  (Doc.
5 | 90, filed April 28, 2006, at 9:13-26.)  Regardless of the
6 | sufficiency of Plaintiff's contentions that Prosecutorial
7 | Defendants misled him, his claim for tolling based on fraudulent
8 | concealment fails because of the nature of the facts allegedly
9 | concealed.  As discussed above, any claim arising from
10 | Prosecutorial Defendants' disclosure of Plaintiff's identity to
11 | Barton accrued when Plaintiff became aware of the exposure and
12 | the danger it exposed him to.  At that point, he was on inquiry
13 | notice of all of the "operative facts" on which a Section 1983
14 | claim based on the exposure of his identity might rest.
15 | Plaintiff has not shown how his ignorance that written
16 | documentation existed impaired his ability to bring such a claim.

17 |       In any event, Plaintiff's claims against Prosecutorial
18 | Defendants fail as a matter of law even if they did not accrue
19 | until he became aware of the written documentation of his
20 | informant status.  This is because the FAC reveals that Plaintiff
21 | became aware that Barton had received written documentation of
22 | Plaintiff's informer status in 1996.  Plaintiff attached to the
23 | FAC a copy of a form headed "INMATE/PAROLEE APPEAL FORM."  FAC
24 | 56.  This document is treated as part of the complaint for
25 | purposes of a Rule 12(b)(6) motion.  *See Hal Roach Studios*, 896
26 | F.2d at 1555 n.19 (9th Cir. 1989); *see also Banco Santander de*
27 | *P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324
28 | F.3d 12, 16 (1st Cir. 2003) (holding that dismissal for failure

**18**

to state a claim based on an affirmative defense may be
predicated on documents attached to the complaint).

Plaintiff's inmate appeal provides as follows:

> On March 23, 1992, Barton was sentenced per
> the plea agreement and **given appellant['] s
> name in writing as the informant who le[d]
> police to Barton.** (Exhibit "E".) Barton was
> now in physical possession of "Prisoner Proof
> Paperwork" by convict standards that would
> get appellant killed in the California State
> Prison System, in effect appellant['] s "Death
> Warrant" once considered with the news
> articles in the case from Barton['] s plea,
> sentencing, and the news media coverage on
> KOVR, KTXL, ect. [*sic*] appellant was a well
> known (Yuba & Sutter County state prison
> inmates) informant.
>
> **Appellant was not fully aware of the actual
> document given to Barton until the matter
> caught up with him in the form of a
> confrontation with another inmate at CSP-
> Sacramento in 1996** when appellant was told
> the inmate had personally reviewed the
> paperwork while Barton's cell mate at
> [P]elican Bay State prison.

FAC 57 (emphasis added). Plaintiff's reference to "the actual
document given to Barton" denotes the written document the
Prosecutorial Defendants gave Barton as a result of the plea
agreement. *Id.* This passage unequivocally maintains that
Plaintiff was first aware in 1996, not 2003, that Barton had
received written documentation of Plaintiff's identity.
Plaintiff does not contend that the phrases "the actual document
given to Barton" and "the paperwork" do not refer to the document
that Prosecutorial Defendants gave to Barton. Rather, Plaintiff
admits that he "made an error" when he indicated in the Inmate
Appeal that he had heard about the informant document in 1996.

1   (Doc. 89, filed April 28, 2006, at 11.)[4]

2       The allegation in the Inmate Appeal contradicts Plaintiff's

3   claim in the FAC that he did not know Barton had been given such

4   a document until March 2003.  *See* FAC 15 n.4.  "[W]hen a written

5   instrument contradicts allegations in a complaint to which it is

6   attached, the exhibit trumps the allegations."  Thompson v. Ill.

7   Dep't of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002);

8   United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355

9   F.3d 370, 377 (5th Cir. 2004) (holding that exhibit attached to

10  the pleading controls over inconsistent allegations).  The

11  statement that Plaintiff knew of the document in 1996 is part of

12  the FAC, and "trumps" his allegation to the contrary.  *See*

13  Thompson, 300 F.3d at 754.

14      The FAC also contains allegations that Prosecutorial

15  Defendants "deliberately failed to protect plaintiff from a known

16  harm ***after exposing him*** as a government witness and informant."

17  FAC ¶ 68 (emphasis added).  It appears that Plaintiff is alleging

18  that Prosecutorial Defendants committed a continuing violation by

19  failing to protect him over time.[5]  Even if Plaintiff is

20

21      [4]  Document 89 as filed on CM/ECF comprises two separately

22  numbered documents.  This citation refers to page 4 of the second
    document, labeled "Declaration of Troy Alexander Temple," which
23  appears on page 11 of the document as electronically filed.

24      [5]  Plaintiff also alleges that Prosecutorial Defendants

25  have, as part of the conspiracy to violate Plaintiff's Eighth and
    Fourteenth Amendment rights "fraudulently concealed evidence and
26  information on a continual basis from shortly after plaintiff
    informed on Barton right up to the present date of this filing
27  from plaintiff including documentary physical evidence subpoenaed
    during the course of plaintiff's trial on escape charges."  FAC
28  ¶ 68.  It is unclear how such a claim is actionable under Section
    1983.  Plaintiff does not provide authority for, and the court is

**20**

contending that Prosecutorial Defendants had a duty to protect him after December 16, 2001, this does not alter the accrual of his claims before that date.  In a Section 1983 case, discrete unlawful acts "'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  A claim against a government official for failure to protect the plaintiff accrues at the moment when a defendant fails to act, not when the plaintiff later suffers an injury.  *Eagleston v. Guido*, 41 F.3d 865, 871-72 (2d Cir. 1994).

In *Eagleston*, four police officers separately reported to plaintiff's home in response to violence between plaintiff and her husband before the crucial statue of limitations date.  *Id.* at 871.  Later, after the crucial date, the husband attacked plaintiff and seriously injured her.  *Id.*  Plaintiff argued that her claims against the four officers accrued on the date of the

---

unaware of, any cause of action under Section 1983 for failure to provide discovery in a criminal case in which he was acquitted. *See, e.g.*, *Schiavone Constr. Co. v. Merola*, 678 F. Supp. 64, 66 (S.D.N.Y. 1988), *aff'd* 848 F.2d 43 (2d Cir. 1988), *cert. denied*, 488 U.S. 855 (1988) (holding that "no denial of a fair trial can be shown where the plaintiff was acquitted of the crime charged").  It appears that Plaintiff is contending that the concealment is evidence of the conspiracy to violate his Eighth and Fourteenth Amendment rights.  Any such actions by Defendants after the crucial limitations date would not make actionable on a civil conspiracy theory conduct occurring before that date.  *See Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) (holding that plaintiffs may recover only for overt acts that they allege occurred within the limitations period).

1 attack, not when they visited plaintiff's home and failed to
2 arrest plaintiff.  *Id.*  The court disagreed, holding that
3 plaintiff's claim accrued when each officer arrived and failed to
4 arrest the husband.

5     Here, the only misconduct Plaintiff alleges is Prosecutorial
6 Defendants' disclosure of his identity without his permission and
7 their endeavors to conceal providing Barton with documentation
8 thereof.   Plaintiff sent letters to Defendant Adams and a Yuba
9 City police officer around June 2, 1992, notifying them that he
10 was in danger and seeking protection.  He had actual on notice
11 long before December 16, 2001, that Prosecutorial Defendants had
12 refused to protect him in prison.

13     Plaintiff's FAC establishes that he was aware of
14 Prosecutorial Defendants' injurious conduct before the crucial
15 limitations date of December 16, 2001.  Any attempt by Plaintiff
16 to amend his claims against Prosecutorial Defendants will be
17 futile because "the allegation of other facts consistent with the
18 challenged pleading could not possibly cure the deficiency."
19 *Schreiber*, 806 F.2d at 1401.  Accordingly, Plaintiff's claims
20 against Prosecutorial Defendants are DISMISSED WITH PREJUDICE.

21              **2.   Municipal Defendants**

22     Defendants argue that the claims against Yuba City and
23 Sutter County (collectively "Municipal Defendants") are also
24 subject to dismissal based on a statute of limitations defense.
25 Section 1983 claims against a county or a municipality require an
26 allegation that a harm stems from the municipality's "policy or
27 custom."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694
28 (1978).  A claim based on a "policy or custom" does not

**22**

necessarily accrue at the time of the harmful act, but rather only later when it is clear, or should be clear, that the "policy or custom" caused the wrongful act. *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995). "Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." *Id.*

Plaintiff alleges that Municipal Defendants have each failed to adopt a policy to protect in-custody witnesses and informants who provide information in criminal prosecutions. FAC ¶ 100. He also alleges that Sutter County has a de facto policy of exposing witnesses and informants in custody. FAC ¶ 101.

Plaintiff was aware that his identity had been disclosed to Barton long before December 16, 2001. He alleges this disclosure resulted from the policy and customs of the Municipal Defendants. Around June 2, 1992, Plaintiff sent letters to Defendant Adams, the Sutter County District Attorney, and Alverson, a Yuba City police officer, expressing concern for his safety. FAC ¶ 34. These communications indicate that Plaintiff was on notice that Sutter County and Yuba City were responsible for the alleged misconduct.

Plaintiff does not allege that he obtained any more information about the policy and custom of Municipal Defendants after the crucial statute of limitations date. The only information about the actions of Municipal Defendants that he claims he acquired after December 16, 2001, is the purported discovery that Barton had received written documentation of Plaintiff's identity. Even ignoring Plaintiff's admission in the

1   Inmate Appeal that he knew of the documentation in 1996, his
2   discovery that Barton had received this paperwork did nothing to
3   make clear to Plaintiff that Municipal Defendants' policy or
4   customs caused his injury.  Plaintiff already knew that the
5   actions of Prosecutorial Defendants had put his life in danger.
6   At best, learning that his life was even more imperiled by the
7   existence of documentary evidence could lead him to believe that
8   a policy or custom, if one existed, was more harmful than he had
9   previously believed.  In other words, if Plaintiff's knowledge
10  that Prosecutorial Defendants had endangered his life by
11  disclosing his identity verbally did not put him on notice of the
12  Municipal Defendants' injurious policy or custom, learning of the
13  written documentation would not give him a unique reason to
14  suspect that such a policy or custom was to blame.  Plaintiff's
15  claims against Municipal Defendants accrued prior to his
16  knowledge of the written documentation and so are barred by the
17  statute of limitations.  In any event, the FAC reveals that
18  Plaintiff learned of the written documentation in 1996.
19  Plaintiff does not contend, and there is no basis to believe,
20  that he can state a claim against Municipal Defendants that
21  accrued after December 16, 2001.  Accordingly, all claims against
22  the Municipal Defendants are DISMISSED WITH PREJUDICE.

23              **3.   Defendants Case, Rosario, Walker, and Suter**

24       Defendants also move to dismiss the claims against Case,
25  Rosario, Walker, and Suter on the basis that they accrued prior
26  to December 16, 2001.  Plaintiff alleges that these individuals
27  violated his constitutional rights when they refused to grant his
28  requests for protective custody.  Defendants Case, Rosario, and

**24**

1  Walker denied Plaintiff's request for protective custody at an
2  Institutional Classification Hearing on November 21, 1997.   FAC
3  ¶ 38.   Defendant Suter denied Plaintiff's request for protective
4  custody in March 1998.   FAC ¶ 41.   Following these denials of
5  protective custody, Plaintiff asked his lawyer to take action on
6  his behalf based on his status as an exposed informant.   FAC
7  ¶ 42.

8        Plaintiff contends that his claims against Case, Rosario,
9  Walker, and Suter did not accrue until he discovered the written
10 documentation of his informant status that had been given to
11 Barton.   Plaintiff does not explain how learning of the existence
12 of that document was necessary to inform him "that he ha[d] been
13 hurt and who inflicted the injury."   *Nasim*, 64 F.3d at 955.   Long
14 before the crucial date of December 16, 2001, the allegations in
15 Plaintiff's FAC establish he was aware that his life was in
16 danger and that these Defendants had failed to act to mitigate
17 that danger.   Even if these Defendants' actions before that date
18 contributed to injuries suffered later, Plaintiff's claims
19 accrued when he knew of the injurious actions.   *See Chardon*, 454
20 U.S. at 8; *Nasim*, 64 F.3d at 956.   Plaintiff does not contend
21 that he can amend his complaint to allege injurious conduct after
22 December 16, 2001.

23       Plaintiff again urges that his claims against Case, Rosario,
24 Walker, and Suter are equitably tolled because of their
25 fraudulent concealment of the informant document given to Barton.
26 Plaintiff has not met, nor does he contend he can amend his
27 complaint to meet, his burden to show that the document informed
28 Plaintiff of any "operative facts that give rise to the claim."

**25**

1  *Thorman*, 421 F.3d at 1094.  Even if Defendants concealed the

2  document from Plaintiff, he was already on notice of any claims

3  against Defendants Case, Rosario, Walker, and Suter.

4  Accordingly, all claims against Defendants Case, Rosario, Walker,

5  and Suter are DISMISSED WITH PREJUDICE.

6          **4.   Defendant Rangel**

7      Defendants contend that Plaintiff has not stated a cause of

8  action against Defendant Rangel under the Eighth Amendment based

9  on her refusal to remove him from the list of prisoners to be

10  transferred to Salinas Valley State Prison ("SVSP").  A

11  prisoner's treatment while confined is subject to scrutiny under

12  the Eighth Amendment.  *Farmer v. Brennan* (*Farmer*), 511 U.S. 825,

13  832 (1994).  The Eighth Amendment requires that prison officials

14  provide humane conditions of confinement and "take reasonable

15  measures to guarantee the safety of the inmates."  *Id.* (citing

16  *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  This duty

17  requires officials to protect prisoners from violence at the

18  hands of other prisoners.  *Id.* at 833.  The rationale is that,

19  "having stripped [prisoners] of virtually every means of

20  self-protection and foreclosed their access to outside aid, the

21  government and its officials are not free to let the state of

22  nature take its course."  *Id.*  A prison official's conduct

23  violates the Eighth Amendment when two requirements are met:

24  first, the deprivation must be, "objectively, 'sufficiently

25  serious,'" and second, a prison official must act with

26  "deliberate indifference" to inmate health or safety.  *Id.* at 834

27  (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)).

28      The objective requirement of an Eighth Amendment claim is

**26**

1  "contextual and responsive to 'contemporary standards of

2  decency.'"  *Hudson v. McMillian* (*McMillian*), 503 U.S. 1, 8

3  (1992).  Thus, because "routine discomfort" fulfills the penal

4  objectives of the criminal justice system, "extreme deprivations

5  are required to make out a conditions-of-confinement claim."  *Id.*

6  at 9.

7      Courts of appeals leave open the possibility that a prisoner

8  who faces a risk of attack, but who has not yet been attacked,

9  may nonetheless be able to recover for Eighth Amendment

10  violations.  *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th

11  Cir. 2001) ("[T]he Eighth Amendment may be implicated not only to

12  physical injury, but also by the infliction of psychological

13  harm." (citing *McMillian*, 503 U.S. at 16-17 (Blackmun, J.

14  concurring))); *Babcock v. White* (*Babcock*), 102 F.3d 267, 273 (7th

15  Cir. 1996) (declining to preclude suits under the Eighth

16  Amendment based solely on psychological injury, also citing

17  Justice Blackmun's *McMillian* concurrence).

18      In the absence of an attack, however, courts have been

19  hesitant to find a "sufficiently serious" deprivation to satisfy

20  *Farmer*'s objective requirement.  *See* 511 U.S. at 834.  A line of

21  Seventh Circuit cases has completely foreclosed recovery based

22  solely on an unrealized risk of violence at the hands of other

23  inmates.  *Doe v. Welborn* (*Doe*), 110 F.3d 520, 524 (1997) ("An

24  allegation that prison officials exposed a prisoner to a 'risk of

25  violence at the hands of other inmates,' . . . does not implicate

26  the Eighth Amendment's Cruel and Unusual Punishments Clause."

27  (quoting *Babcock*, 102 F.3d at 273)).  Meanwhile, the Tenth

28  Circuit has declined to adopt such a rule.  *Benefield*, 241 F.3d

**27**

1  at 1271-72 (rejecting the Seventh Circuit's approach in *Doe* and
2  *Babcock* and holding that plaintiff's allegations that defendant
3  labeled him a "snitch" and communicated the label to other
4  inmates, knowingly exposing him to danger, stated a claim for an
5  Eighth Amendment violation).

6      In any event, Plaintiff cannot satisfy the requirement that
7  he faced an objectively sufficiently serious risk because
8  Defendant Rangel's actions never exposed him to any danger.  In
9  *Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2001), plaintiff alleged
10 that defendant prison officials had threatened to discipline
11 another inmate if he refused to attack plaintiff and had informed
12 that inmate and other inmates that plaintiff was an informant.
13 *Id.* at 490-91.  Plaintiff failed to allege that any inmate
14 assaulted him, that he actually faced a serious threat from any
15 inmate, or that there were any credible rumors that an inmate
16 intended to attack him.  *Id.* at 494.  The court affirmed the
17 district court's Rule 12(b)(6) dismissal on the basis that the
18 complaint failed to allege that defendants' conduct created a
19 substantial risk of serious harm.  *Id.*

20     Here, Plaintiff merely alleges that Defendant Rangel's
21 conduct caused him to remain on the transfer list to SVSP.  He
22 contends that inmate Michael Handline, who was housed at SVSP,
23 wanted to have Plaintiff killed.  FAC ¶ 53.  The FAC establishes
24 that Plaintiff has never been transferred to SVSP.  FAC 3:26-4:3.
25 Nor does he contend he has ever had any contact with Handline.
26 Plaintiff does not assert that he is still on the transfer list.
27 Nor does Plaintiff in the FAC seek forward-looking injunctive
28 relief to remove himself from or to prevent his placement on any

**28**

1  transfer list.  *See Helling v. McKinney*, 509 U.S. 25, 33 (1993)

2  (holding that, because "[i]t would be odd to deny an injunction

3  to inmates who plainly proved an unsafe, life-threatening

4  condition in their prison on the ground that nothing yet had

5  happened to them," the Eighth Amendment "protects against

6  sufficiently imminent dangers").  Rather, Plaintiff seeks to

7  recover damages based on the "thoughts of suicide and despair" he

8  experienced out of fear that he would be transferred.  (Doc. 89,

9  filed April 28, 2006, at 6:2-5.)  Plaintiff has not alleged that

10 Defendant Rangel's failure to remove him from the transfer list

11 exposed him to any risk of being injured by other inmates.

12 Plaintiff has thus failed to allege an objectively serious risk

13 as required by *Farmer*.  Plaintiff does not contend that he can

14 amend his complaint to allege any other conduct by Defendant

15 Rangel.  Accordingly, Plaintiff's claims against Defendant Rangel

16 are DISMISSED WITH PREJUDICE.

17

18         **B.   Plaintiff's Rule 56(f) Motion**

19      Plaintiff has filed a "Motion To Allow For Discovery Under

20 Federal Rule 56(f)."  (Doc. 88, filed April 28, 2006.)  Rule

21 56(f) of the Federal Rules of Civil Procedure authorizes the

22 district court to grant a continuance to a party opposing a

23 motion for summary judgment so it may undertake discovery to

24 obtain facts essential to justify its opposition.  Because the

25 court has dismissed under Rule 12(b)(6) all claims on which

26 Defendants seek summary judgment, Plaintiff's Rule 56(f) motion

27 is DENIED AS MOOT.

28

1          **C.   <u>Plaintiff's Motion for Preliminary Injunction</u>**

2          Plaintiff seeks a preliminary injunction "ordering Carl V.

3   Adams, Sutter County District Attorney, Bill Lockyer, California

4   Attorney General, and the California Department of Corrections"

5   to undertake certain actions to protect Plaintiff.  (Doc. 69,

6   filed January 6, 2006, at 5:28-6:17.)

7          "A preliminary injunction is always appropriate to grant

8   intermediate relief of the same character as that which may be

9   granted finally."  *De Beers Consol. Mines, Ltd. v. United States*,

10  325 U.S. 212, 220 (1945).  An injunction may not issue concerning

11  "a matter lying wholly outside the issues in the suit."  *Id.*,

12  *see, e.g*, *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997)

13  (preliminary injunction to protect plaintiff's First Amendment

14  rights was inappropriate in an action for fraud); *Omega World*

15  *Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997) ("The purpose of

16  interim equitable relief is to protect the movant, during the

17  pendency of the action, from being harmed or further harmed in

18  the manner in which the movant contends it was or will be harmed

19  through the illegality alleged in the complaint.").  Bill Lockyer

20  is not listed as a defendant in the FAC.  Plaintiff's request for

21  an injunction against Bill Lockyer is inappropriate as it lies

22  wholly outside the issues in this suit.

23         The party seeking a preliminary injunction must show that it

24  is likely to prevail on the merits.  *Ashcroft v. ACLU*, 542 U.S.

25  656, 665 (2004).  All claims against Defendant Adams and

26  Defendant California Department of Corrections ("CDC") have been

27  dismissed with prejudice.  (*See* Doc. 23, filed April 13, 2005, at

28  10:4-6.)  Plaintiff has not demonstrated that he is likely to

**30**

prevail on the merits against them.  Accordingly, Plaintiff's motion for a preliminary injunction is DENIED.

### V.   CONCLUSION

For the reasons set forth above:

1.   The motion to dismiss the claims against Defendants Adams, Schroeder, Webster, Yuba City, and Sutter County is **GRANTED**;

2.   The motion to dismiss the claims against Defendants Case, Rangel, Rosario, Suter, and Walker is **GRANTED**;

3.   Plaintiff's motion for discovery under Rule 56(f) is **DENIED AS MOOT**; and

4.   Plaintiff's motion for a preliminary injunction is **DENIED.**

**SO ORDERED.8/22/06**

                                        **/s/Oliver W. Wanger**
                                        **Oliver W. Wanger**
                                        **UNITED STATES DISTRICT JUDGE**