UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY ALEXANDER TEMPLE, | CASE NO. 1:04-CV-6716-LJO-DLB -P |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| CARL ADAMS, et al., | (Doc. 111) |
| Defendants. | |

I.  Defendants' Motion for Summary Judgment

   A.  Procedural History

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's amended complaint, filed April 12, 2005, against defendants Montgomery, Alvarez and Walker ("defendants") for acting with deliberate indifference to plaintiff's safety, in violation of the Eighth Amendment.[1]  On October 31, 2007, defendants filed a motion for summary judgment.  After obtaining extensions of time, plaintiff filed an opposition to defendants' motion on January 22, 2008, and defendants filed a reply on February 4, 2008.

   B.  Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[1] On August 23, 2006, defendants Adams, Schroeder, Webster, Yuba City, Sutter County, Case, Rangel, Rosario, Suter and Walker were dismissed from this action.  (Doc. 98.)

1

Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual


dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

      C.    <u>Undisputed Facts</u>

1. At the time relevant to this action, Temple was a prisoner in the custody of the California Department of Corrections and Rehabilitations (CDCR) at Corcoran State Prison (CSP-Corcoran).
2. Defendants were employees of the CDCR at CSP-Corcoran in the following positions: Alvarez and Carlsen were Correctional Officers with the Investigative Services Unit (ISU) and Montgomery was a Correctional Sergeant with ISU.
3. During an ISU investigation, an inmate stated that inmate Handline had made death threats against Temple.
4. On July 11, 2002, the Institutional Classification Committee (ICC) recommended that

       Temple be transferred to Salinas Valley State Prison (SVSP).

5.      Handline was transferred to SVSP on November 20, 2002.

6.      During his trial preparation on a criminal matter, Temple learned of the alleged death threats and informed ICC on December 11, 2002, that he was afraid of being transferred to SVSP.

7.      On December 11, 2002, the ICC rescinded the transfer endorsement and arranged for Temple to be transferred to the sensitive needs yard (SNY) at California Substance Abuse Treatment Facility. (SATF) in June 2003.

8.      After his incarceration at CSP-Corcoran, Temple was never transferred to the same facility as Handline.

9.      After his incarceration at CSP-Corcoran, Temple has never been physically attacked by Handline.

       D.    <u>Discussion</u>

In his amended complaint, Plaintiff alleges that inmate David Scroogins spread rumors to other inmates in the California State Prison system that he was the informant in a murder case. First Amended Complaint ("FAC") ¶ 35. Plaintiff alleges that these rumors resulted in him having fist fights with another prisoners. FAC ¶ 36. Plaintiff alleges that in January 1996, he and Scroogins were housed in the same facility in New Folsom and Plaintiff started a fist fight with Scroogins as a means of "refuting the informant allegations." *Id.* In August 1997, Plaintiff was placed in administrative segregation and learned that it was "common knowledge" that he was an informant and "he was to be killed as a result." *Id.*

Plaintiff contends that throughout 1997 and 1998 he made requests to several ICC committee members as well as correctional counselors to be placed in protective custody as an exposed informant. FAC ¶¶ 38 - 43. He contends his requests were denied for lack of proof of his informant status. *Id.* Plaintiff was transferred to CSP Corcoran sometime in 1997. FAC ¶ 38.

Plaintiff contends that in 2001, he began hearing rumors that Scroogins, who was confined in a neighboring area of CSP Corcoran, was again telling inmates that Plaintiff was a "rat" in a murder case. FAC ¶ 44. Plaintiff contends this information was disseminated in the Facility 3A Yard, where he was confined. *Id.* Plaintiff contends an inmate who was transferred from Facility

3A to 3B told him "to watch himself" because other inmates in Facility 3A were aware of his informant status. FAC ¶ 46.

Plaintiff contends that on February 12, 2002, fearing that he would be killed as an informant, he cut through his cell window and attempted to escape. FAC ¶ 47. In the unsuccessful attempt, Plaintiff broke multiple bones in each foot. *Id*.

Following the escape attempt, defendants Montgomery, Carlson and Alvarez interviewed Plaintiff's cellmate, John Kocak who told Defendants that Plaintiff was in danger as an exposed informant. FAC ¶ 48. Kocak also told Defendants that he was solicited by inmates Maples and Handline to kill Plaintiff after the escape. *Id*. Defendants did not tell Plaintiff that Kocak had been solicited to kill him. FAC ¶ 49.

On September 12, 2002, the Kings County District Attorney's Office charged Plaintiff with attempted escape and destruction of prison property. FAC ¶ 50. In August 2002, while awaiting trial, Plaintiff was "placed up for transfer" to Salinas Valley State Prison ("SVSP"). FAC ¶ 52. Plaintiff contends that in November 2002, he learned through discovery in his criminal case that he was up for transfers to SVSP, where Handline was housed. FAC ¶ 53. On July 14, 2003, Plaintiff represented himself in the criminal trial. FAC ¶ 60. After an eight-day jury trial, the jury found Plaintiff not guilty based on the necessity defense. FAC ¶ 61.

Plaintiff filed this lawsuit on December 16, 2004. All defendants except Alvarez, Carlsen and Montgomery have been dismissed. Plaintiff alleges that these defendants failed to protect him from a serious risk of harm because he was nearly transferred to the same facility as inmate Handline and Defendants failed to stop the transfer. Plaintiff also contends Defendants failed to warn him that his life was in serious danger by specific individuals, namely Maple and Handline.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Prison officials have a duty to take reasonable steps to

5

protect inmates from physical abuse. Hoptowit, 682 F.2d at 1250 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmates' safety. Farmer, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment if they act with deliberate indifference to the threat of serious harm or injury to an inmate by another prisoner. *See* Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986); Heptad, 682 F.2d at 1250; *see also* Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989) (deliberately spreading rumor that prisoner is snitch may violate right to be protected from violence while in state custody).

Defendant contends, that prisoners are barred from pursuing a cause of action for mental or emotional damages without a showing of physical injury. (Motion, Court Doc. 21, 6:23-24.) The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002). However, the physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages.[2] Id. at 630.

Defendants argue they are entitled to summary judgment because they did not fail to protect Plaintiff. Defendants also point out that Plaintiff was not transferred to the prison where Handline was housed, he was never attacked by Handline and suffered no physical injury.

---

[2] If a plaintiff proves his or her constitutional rights have been violated, nominal damages must be awarded, Schneider v. County of San Diego, 285 F.3d 784, 794-95 (9th Cir. 2002), and punitive damages may be awarded. Smith v. Wade, 461 U.S. 30, 55 n.21 (1986).

Defendants also argue they are entitled to qualified immunity.

Defendants submit evidence that the alleged death threats were investigated and found to be uncorroborated and unsubstantiated. Alvarez Decl. ¶¶ 16, Montgomery Decl. ¶¶ 1-7, Carlsen Decl. ¶¶ 1-4. As part of the investigation defendants Alvarez and Carlsen interviewed inmate Kocak wherein Kocak disclosed that Handline and Maples had made death threats against Plaintiff. Alvarez Decl. ¶ 7. After the interview, defendant Alvarez informed defendant Montgomery of the alleged death threats and confirmed that Plaintiff was in administrative segregation, single cell, walk alone status. Alvarez Decl. ¶¶ 8, 9. Upon learning of the alleged death threat, defendant Montgomery confirmed that Plaintiff was in administrative segregation, single cell, walk alone status. Montgomery Decl. ¶ 6. As part of the investigation of the death threats, defendant Alvarez interviewed Handline and Maples and obtained no information to suggest that they wanted to harm Plaintiff. Alvarez Decl. ¶ 11. The interviews of other inmates did not reveal any information that corroborated Kocak's statement regarding alleged death threats by Handline and Maples. ISU's reviews of inmate mail and monitoring of inmate telephone calls did not reveal any information that corroborated Kocak's statement regarding alleged death threats by Handline and Maples. Alvarez Decl. ¶¶ 13, 14. Because the alleged threats were deemed to be not credible, Defendants contend there was no need to notify classification or Plaintiff. Alvarez Decl. ¶¶ 16, Montgomery Decl. ¶7. Defendants contend they were not aware of Plaintiff's pending transfer to SVSP or Handline's transfer to that institution. Alvarez Decl. ¶17, Montgomery Decl. ¶ 8, Carlsen Decl. ¶ 5. Defendants contend that housing decisions, including transfers are made by the classification committee and not ISU. *Id*.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. As previously stated, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  Plaintiff's verified complaint and opposition constitute opposing affidavits for purposes of summary judgment rule, to the extent they are based on personal knowledge of specific facts which are admissible in evidence.  Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

Although plaintiff contends that Defendants knew of a substantial risk of harm to him and disregarded that risk, plaintiff has submitted no evidence in support of this contention or to refute the evidence of the actions taken by Defendants after inmate Kocak revealed the potential danger to Plaintiff.   Speculative and/or conclusory assertions are insufficient to raise triable issues of fact.  At this stage in the proceedings, plaintiff must do more than set forth general assertions regarding the risk to his safety or the knowledge and intent of defendants.

"Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Viewing the evidence in the light most favorable to plaintiff and drawing all justifiable inferences in plaintiff's favor, Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Anderson, 477 U.S. at 255, Defendants had knowledge of an alleged death threat against Plaintiff from their interview with inmate Kocak.  After the interview, Defendants Alvarez and Montgomery ensured that plaintiff was in administrative segregation, single cell, walk alone status.  Defendants also investigated the alleged threats.  The threats were not corroborated and therefore Defendants did not notify classification or Plaintiff of the information.  The court finds that this is insufficient to support a claim that Defendants knew of and

disregarded a substantial risk of harm. There is no evidence beyond Plaintiff's conclusory allegation, that Defendants knew of Plaintiff's pending transfer to SVSP, or Handline's transfer to that institution. In sum, plaintiff has not presented any evidence sufficient to raise a triable issue of material fact on his Eighth Amendment claim against Defendants for acting with deliberate indifference to his safety, and Defendants are therefore entitled to judgment as a matter of law.[3]

E.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed October 31, 2007, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 26, 2008**            /s/ **Dennis L. Beck**
                                  UNITED STATES MAGISTRATE JUDGE

---

[3] In light of the finding that defendants are entitled to summary judgment on plaintiff's claim against them on the merits, the court does not reach defendants' argument that they are entitled to qualified immunity.